IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CLAUDETTE CHAISSON, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-0506 |
| | § | |
| HORNBECK OFFSHORE SERVICES, | § | |
| INC., *et al.*, | § | |
|     Defendants. | § | |

# **MEMORANDUM AND ORDER**

This case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 46] filed by Defendants Hornbeck Offshore Services, Inc., Hornbeck Offshore Transportation, LLC (collectively, "Hornbeck") and Exxon Mobil Corporation ("Exxon"). Plaintiff Claudette Chaisson, Individually, as Next Friend of the Minor Jonathan V. Chaisson, and as Administratrix of the Estate of John V. Chaisson filed a Response [Doc. # 48], and Defendants filed a Reply [Doc. # 55].[1] Having reviewed

---

[1] Also pending is a Motion for Leave to Adopt Arguments and Exhibits of Original Plaintiff's Response to Defendants' Motion for Summary Judgment [Doc. # 52] in which Intervenors Kim Roy, John Michael Chaisson, and Christopher John Chaisson (biological children of Decedent John V. Chaisson but not of Plaintiff Claudette Chaisson) seek to adopt Plaintiff's Response rather than prepare and file their own Response. Plaintiff has filed a Response in opposition [Doc. # 54], arguing that "[t]o the extent that the Defendants have limited insurance coverage to satisfy any judgment obtained in this lawsuit, Plaintiffs and Intervenors will potentially be fighting to recover their damages from the same limited policy." *See* Response [Doc. # 54], p. 2. Because the Court is granting Defendants' Motion for Summary Judgment, any concerns about recovering a judgment from a single insurance fund is moot. As a result, the Court **grants** the Motion to Adopt.

the full record and having applied governing legal authorities, the Court **grants** the Motion for Summary Judgment.

## I.   BACKGROUND

Plaintiff's decedent, John Chaisson ("Chaisson"), was employed by Fire Protection Service, Inc. ("FPS") as a marine helper. FPS inspected portable fire extinguishers, breathing apparatus, and fire protection systems on vessels.

FPS was hired by Hornbeck to conduct an annual inspection of fire extinguishing equipment and self-contained breathing apparatus aboard the M/V PATRIOT SERVICE. The vessel is an offshore tug that was docked at an Exxon refinery in Louisiana. Also docked at the Exxon facility, between the dock and the tug, was the oil barge that was being pushed by the tug.

The Master Service Agreement between Hornbeck and FPS provided that Hornbeck had "no right or authority to supervise or give instructions to the employees, agents or representatives of [FPS], and such employees, agents or representatives at all times shall be under the direct and sole supervision and control of [FPS]. *See* Master Service Agreement, Exh. M to Motion for Summary Judgment, pp. 6-7. The Master Service Agreement also provided that all work performed thereunder would be at the sole risk of FPS. *See id.* at 7.

On February 20, 2008, Chaisson was assigned to work the Hornbeck job, accompanied by FPS lead technician, Mike Kelly. At approximately 2:30 p.m., Chaisson and Kelly arrived at the Exxon facility. They passed through two security gates before being able to board the tug via a long walkway and the ship's gangway on the Exxon dock.

FPS, Chaisson's employer, required its employees to wear a personal flotation device ("PFD") when working on vessels. Notwithstanding this FPS rule, Chaisson and Kelly left their company-issued PFDs in the company truck and did not take them onto the tug.

Chaisson and Kelly were signed in on the tug by a Hornbeck employee at 2:57 p.m. At that time, they were provided a 15-minute orientation.

Chaisson and Kelly inspected the fire protection equipment on the tug. They discovered that certain equipment required additional service that needed to be performed off the tug. The equipment was collected and placed together in an area outside the galley doorway.

Around 8:00 p.m., Chaisson and Kelly met in the galley with the tug Captain, Jack Kennedy, and with deckhand Heather Harris, to review paperwork generated during the inspection. Afterward, Captain Kennedy and Harris offered to help with

the removal from the tug of the equipment that needed additional service. Chaisson left the galley with Captain Kennedy and Harris, and Kelly remained in the galley.

Harris told Chaisson to make sure he put on his gear before going out on deck, pointing to the PFDs hanging on the rack next to Chaisson. Chaisson responded "okay" and neither Kennedy nor Harris saw Chaisson again after that exchange.

Kelly later heard something that he believed could be a cry for help. Kelly looked off the port side of the tug and saw a white object in the water. He also heard what he believed was a splash about 35-50 yards away from the tug. Kelly thought he saw someone struggling in the water. Kelly reported what he had seen and heard.

At approximately 8:50 p.m., Captain Kennedy learned that there may be a man overboard. He sounded the general alarm, called tugs located downstream to ask for assistance in the search and rescue, obtained assistance from the United States Coast Guard, and contacted the Port Ship launch service to mobilize additional vessels. Meanwhile, Harris searched the area around Exxon's dock and pier.

Chaisson's body was recovered eight months later in October 2008.

Plaintiff filed this lawsuit in February 2009. After an opportunity to complete discovery, Defendants filed this Motion for Summary Judgment. The Motion has been fully briefed and is now ripe for decision.

## II.     STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312

(5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the

non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Service Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413). Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(e); *Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat

summary judgment where the evidence in the record is to the contrary. *See In re Hinsely*, 201 F.3d 638, 643 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III. ANALYSIS

### A. Hornbeck

A vessel owner owes narrow duties under 33 U.S.C. § 905(b) to maritime workers such as stevedores, *see Scindia Steam Nav. Co. v. De Los Santos,* 451 U.S. 156, 172 (1981); *Romero v. Cajun Stabilizing Boats Inc.*, 307 F. App'x 849, 851 (5th Cir. Jan. 22, 2009), and employees of independent contractors other than stevedores, such as Chaisson in this case, *see Hill v. Texaco, Inc.*, 674 F.2d 447, 451 (5th Cir. 1982). These narrow duties are the "turnover duty," the "active control duty," and the "duty to intervene." *See Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 98 (1994); *Moore v. M/V ANGELA*, 353 F.3d 376, 380 (5th Cir. 2003). A breach of one of these three duties results in liability only if it was a "substantial factor" in the injury.

*Moore*, 353 F.3d at 383. Plaintiff argues that Hornbeck violated two of those duties: the "active control duty" and the "duty to intervene."

### 1. "Active Control Duty"

Plaintiff alleges that Hornbeck breached its "active control duty" because it failed to require Chaisson to wear a PFD, failed to assign a crew member to escort Chaisson and monitor his movements, and failed to have an operational fast rescue boat. A vessel owner may be liable for injuries if it either (1) "actively involves itself in the [independent contractor's] operations and negligently injures" an independent contractor's employee, or (2) fails to exercise due care to protect an independent contractor's employee "from hazards they may encounter in areas, or from equipment, under the active control of the vessel" during the independent contractor's operations. *See Scindia*, 451 U.S. at 167. "This duty recognizes that although a vessel owner no longer retains the primary responsibility for safety in a work area turned over to an independent contractor, no such cession results as relates to areas or equipment over which the vessel's crew retains operational control." *Manuel v. Cameron Offshore Boats, Inc.,* 103 F.3d 31, 34 (5th Cir. 1997) (*citing Pimental v. LTD Canadian Pacific Bul,* 965 F.2d 13 (5th Cir. 1992)). For there to be an "active control duty," "the vessel must exercise active control over the actual methods and operative details" of the

independent contractor's work. *Romero*, 307 F. App'x at 851-52 (citing *Pledger v. Phil Guilbeau Offshore, Inc.*, 88 F. App'x 690, 692 (5th Cir. Feb. 10, 2004)).

The *Scindia* duties "relate primarily to the physical conditions of the ship." *See Prestenbach v. Global Int'l Marine Inc.*, 244 F. App'x 557, 561 (5th Cir. July 12, 2007). Plaintiff has failed to identify any physical condition on the tug that caused Chaisson to end up in the Mississippi River. Plaintiff also has identified no physical condition on the tug that was affected by Captain Kennedy and Harris carrying the equipment needing service off the vessel.

Plaintiff argues instead that Hornbeck maintained "active control" over the vessel because Captain Kennedy and Harris "substantially interfered, by invitation or otherwise, with the contractor's exercise of exclusive control by actively intervening in the area." *See* Response, p. 23 (citing *Gonzalez v. United States*, 588 F. Supp. 2d 747, 754 (S.D. Tex. 2008)). Specifically, Plaintiff bases the "active control duty" argument on Captain Kennedy and Harris having carried the equipment needing service off the vessel. Evidence that Hornbeck personnel carried equipment off the vessel, however, is not evidence that they intervened or interfered with Chaisson and Kelly's performance of the work for which they were hired – to conduct an annual inspection of the fire protection equipment on the tug. There is no evidence that any

Hornbeck employee instructed or directed Chaisson and Kelly in performing these duties.

The Court finds the Fifth Circuit's decision in *Pledger v. Phil Guilbeau Offshore, Inc.*, instructive. In that case, the Fifth Circuit rejected a claim that the vessel owner was in "active control" of loading operations by directing the location at which each load was to be stowed, noting that "determining placement of the cargo does not constitute active control."[2] *Pledger*, 88 F. App'x 690, (5th Cir. Feb. 10, 2004) (citing *Clay v. Daichi Chhuo Shipping*, 237 F.3d 631 (5th Cir. Nov. 1, 2000)). In this case, as in *Pledger*, the vessel owner's employees did not engage in activity that equated with the exercise of active control over the actual methods and operative details of how the independent contractor performed the work he was hired to perform.

Similarly, in *Bias v. Hanjin Shipping Co., Ltd.*, a ship's crew actively participated in "rigging some lights to the structure of the ship to provide light" for the longshoremen. *Bias*, 2009 WL 746051, *5 (S.D. Tex. Mar. 18, 2009) (Lake, J.). Judge Lake rejected Bias's argument that the vessel owner had an "active control" duty to provide adequate lighting because it had placed additional lighting on the

---

[2]  In *Pledger*, the plaintiff slipped in algae growing on the wooden deck of the supply boat onto which the cargo was being loaded. *Pledger*, 88 F. App'x at 691.

vessel. *Id.* at *6. Judge Lake noted that the Fifth Circuit does not allow an injured longshoreman (or, as in the case at bar, independent contractor's employee) to "foist the duty of complying" with health and safety requirements on the shipowner. *Id.* (quoting *Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331, 333 (5th Cir. 1977)).

Plaintiff has failed to identify any connection between Kennedy and Harris carrying equipment off the vessel and the Chaisson's entry into the river. There is no allegation that Kennedy or Harris actively caused Chaisson to end up in the water. Plaintiff complains instead that Hornbeck failed to force Chaisson to wear a PFD, failed to assign a crewmember to escort Chaisson,[3] and failed to provide an operational fast boat to rescue Chaisson. None of these alleged inadequacies is affected in any way by the Captain and Harris carrying the equipment off the vessel. This is particularly true where, as here, there is no evidence that Kelly and Chaisson participated in removing the equipment.

Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of the allegation that Hornbeck violated its "active control duty." As a result, Hornbeck is entitled to summary judgment on this theory.

---

[3] The Fifth Circuit has held specifically that allegations regarding an inadequate crew do not allow recovery under § 905(b). *See Prestenbach*, 244 F. App'x at 561.

### 2.     "Duty to Intervene"

Plaintiff alleges that Hornbeck violated its "duty to intervene" by failing to require Chaisson to wear a PFD. The "duty to intervene" is a narrow one. *See Futo v. Lykes Bros. S.S. Co.*, 742 F.2d 209, 216 (5th Cir. 1984). "To establish a duty to intervene, the plaintiff must first show that the vessel owner was actually aware of the dangerous condition." *Fontenot v. McCall's Boat Rentals, Inc.*, 227 F. App'x 397, 404 (5th Cir. May 14, 2007) (citing *Helaire v. Mobil Oil Co.,* 709 F.2d 1031, 1039-40 (5th Cir. 1983). But proof of the vessel owner's awareness of a dangerous condition is insufficient; the plaintiff must show "something more." *See Futo*, 742 F.2d at 215; *Greenwood v. Societe Francaise De,* 111 F.3d 1239, 1249 (5th Cir. 1997). Specifically, the plaintiff is required to show "not only that the shipowner had actual knowledge of the defect and of the stevedore's continuing use of the defective item," but also that the vessel owner had (1) "actual knowledge that the [defect] posed an unreasonable risk of harm" and (2) "actual knowledge that it could not rely on the stevedore to protect its employees and that if unremedied the condition posed a substantial risk of injury." *See Greenwood,* 111 F.3d at 1248. The vessel owner is entitled to rely on the contractor's expert judgment as to the safety of its working conditions and whether a condition, although dangerous, is safe enough to permit

work to continue. *See Fontenot*, 227 F. App'x at 405 (citing *Greenwood*, 111 F.3d at 1249).

The "duty to intervene" does not "extend to an open and obvious transitory condition . . . that is created entirely by the independent contractor, is under its control, and relates wholly to its own gear and operations." *Futo,* 742 F.2d at 216. Where, as here, the hazard is created by the independent contractor, the Court determines whether there is a duty to intervene by considering the following factors:

> (1) whether the hazard was open and obvious, (2) whether the hazard was located within the ship or ship's gear, (3) which party created the hazard, (4) which party was in a better position to correct the hazard, (5) which party owned and controlled the defective item, (6) whether an affirmative act of negligence or acquiescence in the use of the dangerous item occurred, and (7) whether the shipowner assumed any duty with respect to the hazard.

*Prestenbach v. Chlos Challenge Shipping & Trading, S.A.*, 153 F. App'x 921, 923 (5th Cir. Oct. 7, 2005) (citing *Casaceli v. Martech Int'l Inc.*, 774 F.2d 1322, 1328 (5th Cir. 1985); *Futo*, 742 F.2d at 218, 221).

In this case, Plaintiff has presented proof that Chaisson was not wearing a PFD. Plaintiff has failed, however, to present evidence that Hornbeck had actual knowledge that Chaisson's failure to wear a PFD created an unreasonable risk of harm during the time Hornbeck was aware he was not wearing one. At that time, Chaisson, Captain Kennedy, Harris and Kelly were all in the galley of the tug and there is no evidence

that any of the four was wearing a PFD. Later, when Harris and Chaisson were outside the galley, there is evidence that Harris believed it was important for Chaisson to wear a PFD. Plaintiff has not presented evidence that Hornbeck could not rely on Chaisson to put on a PFD for his own protection.[4] Specifically, the uncontroverted evidence in the record is that Harris told Chaisson to put on his gear before going onto the open deck, that she pointed to the PFDs hanging near Chaisson, and that Chaisson responded "okay." There is no evidence that Harris knew or had reason to know that Chaisson would decide not to put on a PFD.

Plaintiff has failed to present evidence that raises a genuine issue of material fact in support of the "duty to intervene" argument. As a result, Hornbeck is entitled to summary judgment on this claim.

### B.  Exxon

Plaintiff argues that "Exxon is culpable for not tasking its employees to require visitors to its dock to wear PFDs when granted access to Exxon's piers and docks." *See* Response, p. 32. The parties agree that Louisiana law applies to this claim.[5]

---

[4] It is noted in passing that there is no indication in the record that Chaisson was an inexperienced marine helper.

[5] Unless there is a maritime relationship between the parties, a dock owner's duty is determined by the application of state law. *See Florida Fuels, Inc. v. Citgo Petroleum Corp.,* 6 F.3d 330, 332 (5th Cir. 1993).

Under Louisiana law, a dock owner owes an invitee such as Chaisson the duty to provide a reasonably safe dock. *See Florida Fuels, Inc. v. Citgo Petroleum Corp.*, 6 F.3d 330, 333 (5th Cir. 1993). "Generally speaking, the circumstances giving rise to a dock owner's liability involve an actual physical defect of the dock itself, such as rotten or missing floor planks, manifestly inadequate lighting on a dock routinely used during the night, or slippery floor surfaces." *Tullos v. Rowan Drilling Co., Inc.*, 2006 WL 2521329, *3 (S.D. Tex. Aug. 25, 2006).

Plaintiff does not allege any physical defect involving Exxon's dock. Indeed, Plaintiff does not allege any manner in which Exxon's dock was not "reasonably safe." The uncontroverted evidence establishes that the dock could be accessed only through locked security gates, the dock was surrounded by protective railing, and the pier for crossing to a vessel from the dock had protective railing on both sides. Given these protections and the absence of any evidence of a defective condition on the dock, there is no legal basis for requiring Exxon to force Plaintiff to wear a PFD when walking from the parking lot to the dock to the vessel. Exxon is entitled to summary judgment.

## IV. **CONCLUSION AND ORDER**

Plaintiffs have failed to present evidence that raises a genuine issue of material fact in support of their claims against Hornbeck and Exxon. As a result, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 46] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**. It is further

**ORDERED** that Intervenors' Motion for Leave to Adopt Arguments and Exhibits of Original Plaintiffs' Response to Defendants' Motion for Summary Judgment [Doc. # 52] is **GRANTED**.

The Court will issue a separate final order.

SIGNED at Houston, Texas, this **28th** day of **April, 2010**.

_____
Nancy F. Atlas
United States District Judge